UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GERARDO SANCHEZ and THE ESTATE OF
ZORAIDA GONZALEZ,
        Plaintiff,

- against -

HOOSAC BANK, TRACY McCONNELL,
MARC E. ELLIOTT, P.C., MARC E. ELLIOTT,
KEVIN COFFMAN BOPP and "LAW FIRM
John/Jane Does 1-20",
        Defendants.
------------------------------------------------------------X

12 Civ. 8455 (ALC)

ORDER AND OPINION

**ANDREW L. CARTER, JR., United States District Judge:**

Defendants/Counterclaimants Hoosac Bank ("Hoosac"), Tracy McConnell, Marc E. Elliott, P.C., Marc E. Elliott, Kevin Coffman Bopp and unknown Law Firm Defendants (collectively, "Defendants") seek judgment on the pleadings to dismiss, in its entirety, the complaint of Plaintiffs Gerardo Sanchez ("Sanchez") and the Estate of Zoraida Gonzalez (the "Estate", and together with Sanchez, "Plaintiffs"). Defendants contend that none of Plaintiffs' claims can survive dismissal under Fed. R. Civ. P. 12(c) and simultaneously seek sanctions and judgment on the pleadings on their counterclaims. Plaintiffs, without leave of court, also submit a "cross-motion" for disqualification of Defendant Elliott. For the reasons stated below, Plaintiffs' motion is denied and Defendants' motion to dismiss the complaint is granted. The rest of Defendants' motions are denied.

BACKGROUND

In 2008, Defendant Hoosac Bank made three loans to Samuel Adams Enterprises, LLC (the "Borrower"), totaling $1,240,000. The Borrower did not timely repay the loans on which Plaintiffs and Polonia Development and Preservation Services Company, LLC ("Polonia") were

1

named as guarantors. Polonia is a community development organization of which Sanchez is the managing director. Polonia and Zoraida Gonzalez, now deceased, were the original guarantors of the loans and signed guarantees in 2008. After Gonzalez's death, Sanchez signed a guaranty on January 21, 2010. Hoosac brought an action in the Supreme Court of New York, Queens County, against Polonia and the Estate, Index No. 701298/12 (the "Underlying State Action"). By memorandum dated February 20, 2013, the state court granted summary judgment in lieu of complaint to Hoosac and denied Sanchez's motion for disqualification of Marc Elliott as "without any legal foundation and frivolous." Affidavit of Marc Elliott in Support of Motion to Dismiss and for Sanctions ("Elliott Aff."), Ex. E). Judgment was entered against Polonia and the Estate in the amount of $1,378,377.68 on June 25, 2013.[1]

In this suit, Plaintiffs' Complaint revolves around allegations that Defendants filed fraudulent affirmations and affidavits that falsely stated that Plaintiffs were served with process in state court "when in fact they were not." Plaintiffs allege claims under five statutory schemes: the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; civil RICO, 18 U.S.C. § 1964(c); N.Y. General Business Law § 349; N.Y. Judiciary Law § 487; and 42 U.S.C. § 1983. Defendants, for their part, allege counterclaims for breach of contract for non-payment under the guarantees and injunctive relief.

---

[1] Although the Rooker-Feldman doctrine is superficially an issue, this case was filed, perhaps inappropriately, while the Underlying State Action was still pending and before judgment was entered against the plaintiffs, on November 19, 2012. Therefore, the doctrine is inapplicable. Green v. Mattingly, 585 F.3d 97, 101 (2d Cir. 2009) (Rooker–Feldman only applies where four factors are satisfied: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced).

DISCUSSION

I. Standing

As an initial matter, the Court questions whether Sanchez may bring this case at all. It does not appear that Sanchez was named as a defendant in the Underlying State Action. He thus has no standing to challenge the service in that action as improper. To the extent, the action is brought in his representative capacity as the managing director of Polonia, he may not bring an action on behalf of a corporation as a pro se litigant. 28 U.S.C. § 1654; Rowland v. California Men's Colony, 506 U.S. 194, 202, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) ("[S]ave in a few aberrant cases, the lower courts have uniformly held that 28 U.S.C. § 1654 ... does not allow corporations, partnerships, or associations to appear in federal court otherwise than by licensed counsel."); Lattanzio v. COMTA, 481 F.3d 137, 139-40 (2d Cir. 2007) (layperson may not represent a "separate legal entity" such as a corporation, a partnership, or a limited liability company).

Furthermore, Plaintiff Estate of Zoraida Gonzalez must be dismissed because under the law of the Second Circuit, a pro se plaintiff cannot represent an estate that has creditors. Pridgen v. Andresen, 113 F.3d 391, 393 (2d Cir. 1997) ("[A]n administrat[or] or execut[or] of an estate may not proceed pro se when the estate has beneficiaries or creditors other than the litigant."); see also Iannaccone v. Law, 142 F.3d 553, 559 (2d Cir. 1998) ("[A]n action cannot be described as the litigant's own, because the personal interests of the estate, other survivors, and possible creditors, as here, will be affected by the outcome of the proceedings. A non-lawyer representative therefore would be litigating claims that are not personal to him."). Based on the suit brought against the Estate, which was subsequently reduced to judgment, in the Underlying

State Action, the Estate clearly has at least one creditor and cannot have be represented by a pro se administrator.

Nevertheless, the Court considers the merits of the parties' motions.

II. Plaintiffs' Motion for Disqualification

The Court first considers Plaintiffs' untimely motion for disqualification of Defendant Elliott for representing himself as well as his co-defendants in this action. The motion is denied.

Disqualification motions are committed to the discretion of the district court. Cheng v. GAF Corp., 631 F.2d 1052, 1055 (2d Cir. 1980), vacated on other grounds and remanded, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981)); Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983) (if factors are met, "an attorney *may* be disqualified from representing a client") (emphasis added).

Courts in this Circuit show "considerable reluctance to disqualify attorneys" because "disqualification has an immediate adverse effect on the client by separating him from counsel of his choice" and because "disqualification motions are often interposed for tactical reasons [a]nd even when made in the best of faith. . . inevitably cause delay." Board of Ed. of City of New York v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979) ("Unless an attorney's conduct tends to "taint the underlying trial," courts should be quite hesitant to disqualify an attorney."); Blue Planet Software, Inc. v. Games Intern., LLC, 331 F. Supp. 2d 273, 278 n. 2 (S.D.N.Y. 2004).

Since courts deciding a motion for disqualification should take a "restrained approach that focuses primarily on preserving the integrity of the trial process," U.S. Football League v. National Football League, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985) (quoting Armstrong v. McAlpin, 625 F.2d 433, 444 (2d Cir.1980), vacated on other grounds and remanded, 449 U.S.

4

1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981), "[m]ere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion." id.

Plaintiffs come nowhere close to meeting this heavy burden. Plaintiffs contend that "Attorney Marc Elliott, Esq. has a Conflict of Interest by representing two co-defendants. It is obvious that Attorney Marc Elliott is making a mockery of justice and he should be disqualified because it represents an Appearance of Impropriety." (Cross-Motion for Disqualification ¶ 124). Parties may waive many conflicts of interest, including the weak one alleged here that the representation of co-defendants gives the appearance of impropriety, especially where, as here, the co-defendants do not object to the representation. Moreover, Plaintiffs have not identified any conflicting interests among the Defendants. Contrary to Plaintiffs' "sincere belie[f]", (Cross Motion for Disqualification ¶ 134), there is no need for a full evidentiary hearing to create an issue where none otherwise exists. The motion is denied.

III. Defendants' Motion for Judgment on the Pleadings

The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. Cleveland v. Caplaw Enterprises, 448 F.3d 518, 521 (2d Cir. 2006) (citing Karedes v. Ackerley Group, Inc., 423 F.3d 107, 113 (2d Cir. 2005)). Accordingly, a claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

On a motion to dismiss, the court will accept the plaintiff's allegations as true, see Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007), and "draw all reasonable inferences in favor of the plaintiff," id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)). However, the court need not accept allegations that are merely conclusions of law. Kassner, 496 F.3d at 237 (complaint inadequate if it "merely offers labels and conclusions or a formulaic recitation of the elements of a cause of action").

"In considering a motion to dismiss, the Court may consider documents attached as an exhibit thereto or incorporated by reference, documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken. Thomas v. Westchester County Health Care Corp., 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (internal citations omitted). To incorporate a document by reference, "the Complaint must make a clear, definite and substantial reference to the document[ ]." Id. at 275-76. Moreover, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce [the document] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure." Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). Notably, a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough. Chambers, 282 F.3d at 153.

A. Class Allegations

6

As an initial matter, the Court dismisses the class action allegations (Compl. ¶¶ 75-87). The proposed class, "all persons who have been or will be sued by Defendants in actions commenced in the New York State Court System, and where improper service. . . has been or will be performed" (Compl. ¶ 77) is entirely too broad, is not suitable for disposition as a class, and contemplates future class members ("all persons who will be sued by Defendants" and "where improper service will be performed") so that this Court's work would never be done. The extensive diatribe about sewer service is an academic essay rather than allegations supporting a claim against these Defendants. More important, there are absolutely no allegations describing Defendants' involvement in improper service in any other case than the Underlying State Action involving Plaintiffs beside a conclusory allegation that Defendants engaged in sewer service in nearly all their lawsuits. Therefore, the class action allegations are dismissed.

B. Fair Debt Collection Practice Act

Plaintiffs first allege violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, which Defendants argue is inapplicable because the underlying loans are commercial, not consumer, debts and because the Defendants are creditors, not "debt collectors." FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The loans at issue here were clearly commercial loans, as indicated on the loan agreements as each loan entered was a "business loan agreement," secured by a "commercial promissory note." Moreover, although certain creditors seeking debts in the name of a third-party are considered debt collectors, see 15 U.S.C. § 1692a(6), such is not the case here, where Defendant Hoosac in its

own name sought judgment on loans it had executed to the Borrower. 15 U.S.C. § 1692a(6) (The term "debt collector" does not include, *inter alia*, "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor").

C. "Civil" RICO

Plaintiffs allege a violation of the civil RICO provision, see 18 U.S.C. § 1964(c), which allows civil remedies to any person injured in his business or property by reason of predicate acts of racketeering activity. The predicate acts for a finding of "racketeering activity" are listed in 18 U.S.C. § 1961. Mail and wire fraud are the only possible crimes of the very severe offenses listed in 18 U.S.C. § 1961 that Plaintiffs even attempt to allege. (Compl. ¶¶ 104-110). Yet Plaintiffs do not adequately plead these acts and accordingly the civil RICO claim must be dismissed.

To state a civil RICO claim, plaintiff must plead "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." Zavalidroga v. Cote, 395 F. App'x 737, 740–41 (2d Cir. 2010) (quoting Moss v. Morgan Stanley, Inc., 718 F.2d 5, 17 (2d Cir. 1983)). A plaintiff's burden is high when pleading RICO allegations as "[c]ourts look with particular scrutiny at claims for a civil RICO, given RICO's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." Spiteri v. Russo, No. 12–CV–2780 (MKB)(RLM), 2013 WL 4806960, at *45 (E.D.N.Y. Sept. 7, 2013) (citations omitted).

Where the alleged "conduct" or predicate acts sound in fraud, as mail and/or wire fraud, they must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure and

8

the plaintiff must allege facts that give rise to a strong inference of fraudulent intent. Curtis v. Law Offices of David M. Bushman, Esq., 443 F. App'x 582, 584 (2d Cir. 2011) ("[A]ll allegations of fraudulent predicate acts[ ] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).") "Allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, and where and when they took place, and [should] explain why they were fraudulent." Spool v. World Child Intern. Adoption Agency, 520 F.3d 178, 185 (2d Cir. 2008) (internal quotation marks and citation omitted); Am. Fed'n of State, Cnty. & Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Bristol–Myers Squibb Co., No. 12–CV–2238, 2013 WL 2391999, at *4 (S.D.N.Y. June 3, 2013) ("[T]o comply with Rule 9(b), the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."). Moreover, "where multiple defendants are accused of mail or wire fraud, plaintiffs must plead with particularity as to each defendant. . ." U.S. Fire Ins. Co. v. United Limousine Serv., Inc., 303 F. Supp. 2d 432, 443-44 (S.D.N.Y. 2004) (citations omitted).

In addition, a pattern of racketeering must be adequately alleged in the complaint. Spool, 520 F.3d at 183. Finally, the complaint must allege more than garden-variety fraud or other common-law offenses. U.S. Fire Ins. Co., 303 F. Supp. 2d 432, 443 (S.D.N.Y.2004) ("[C]ourts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb."); Spiteri, 2013 WL 4806960, at *46 (collecting cases); Helios Int'l S.A.R.L. v. Cantamessa USA, Inc., No. 12–CV–8205, 2013 WL 3943267, at *9 (S.D.N.Y. July 31, 2013) ("[T]he allegations in the Complaint that purport to plead predicate criminal acts sufficient to establish a cause of action under RICO amount merely

9

to a breach of contract claim [and common business torts], which cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal.") (internal citation and quotation marks omitted).

Based on this standard, Plaintiffs claim fall woefully short. If mail fraud is the predicate violation, Plaintiffs fail to adequately plead mail fraud violations. They do not allege explain which statements were fraudulent and why, and do not delineate specific allegations of fraud as to each defendant. Moreover, even if true that the Defendants engaged in sewer service to secure default judgments—an assumption that is decidedly not true for Polonia and the Estate as default judgment was not entered against them, but rather they appeared and lost in state court—there are other remedies. For instance, a party can seek relief from fraudulently obtained default judgment under New York law. See N.Y. C.P.L.R. § 5015 (allowing relief for excusable default within one year, id. § 5015(a)(1), or for fraud, misrepresentation or other misconduct of an adverse party, id. § 5015(a)(3)). Therefore, plaintiffs have not alleged, with requisite particularity, a "pattern" of racketeering activity so their Civil RICO claim fails. Accordingly, the motion to dismiss the Civil RICO claim is granted and the claim is dismissed as to all defendants.

D. 42 U.S.C. § 1983 and Criminal Violations

Finally, Plaintiffs allege that Defendants have violated their constitutional rights under "by filing, under color of law, false affidavits with the court" (Compl ¶ 127; see also id. ¶ 130) to constitute a violation of 42 U.S.C. § 1983. To adequately plead liability under section 1983, the plaintiff must allege: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her

constitutional rights or privileges. Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998).

1. Under Color of Law/State Actor

A private activity may be deemed state action if there is (1) a "close nexus" between the private and state actors, (2) a product of "state compulsion," or (3) private activity is a public function. Turturro v. Continental Airlines, 334 F. Supp. 2d 383, 394 (S.D.N.Y. 2004).

a. The "Close Nexus" Test

Under the "close nexus" test, the plaintiff must show "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Turturro, 334 F. Supp. 2d at 395 (citation omitted); Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786 (1982). The close nexus requirement "assure[s] that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." Turturro, 334 F. Supp. 2d at 395.

Plaintiffs do not allege any state statute or regulation that would provide a close nexus. The fact that Defendants include a bank subject to federal regulation and law offices subject to the regulation of their respective states does not morph their private actions into actions of the state. Jackson v. Metropolitan Edison Co., 419 U.S. 345, 350, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974) ("[T]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State"); see Blum, 457 U.S. at 1008, 102 S.Ct. at 2788 (a state regulation requiring physicians to prepare a nursing home patient discharge plan and complete a form does not convert the discharge decision into action by the state).

11

The close nexus test can also be met if it involves a situation in which the State has "so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." Turturro, 334 F. Supp. 2d at 396. But Plaintiffs do not allege such facts. For these reasons, Defendants' alleged fraudulent affidavits do not meet the close nexus test.

b. The State Compulsion Test

To satisfy the "state compulsion test," the plaintiff must show the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Turturro, 334 F. Supp. 2d at 394; Blum, 457 U.S. at 1004, 102 S.Ct. at 2786. The Defendants' alleged decision to file fraudulent affidavits of service was not mandated by the state. The state compulsion test provides no basis for Plaintiffs' section 1983 claims.

c. The Public Function Test

Finally, state action may be found for any alleged actions undertaken by the private party that constitute powers that are "traditionally the exclusive prerogative of the State." Turturro, 334 F. Supp. 2d at 396 (citation omitted); Jackson, 419 U.S. at 353, 95 S.Ct. at 454. In essence, the action must be "so clearly governmental in nature as to amount to a public function." See Turturro, 334 F. Supp. 2d at 396 (citing Schlein v. Milford Hospital, Inc., 561 F.2d 427, 429 (2d Cir. 1977)) (internal quotations omitted). "The public function test as applied is quite stringent and under the doctrine an extraordinarily low number of functions have been held to be public." Doe v. Harrison, 254 F. Supp. 2d 338, 343 (S.D.N.Y. 2003) (citation omitted).

Although the state does set forth when and how affidavits of service, the decision to file false affidavits as Plaintiffs allege, is the polar opposite of that public function. Regardless,

"[u]nlike most functions involved in the conduct of a lawsuit by private parties, the service of summons is essentially and traditionally a public function." U.S. v. Wiseman, 445 F.2d 792, 796 (2d Cir. 1971). Under Wiseman, "sewer service" is a public function that might give rise to a finding of state action.

### A. Deprivation of Rights

Even so, Plaintiffs' claims fail because they do not allege the Defendants' personal involvement in issuing sewer service, the only possible state action. At best, the Complaint alleges that Defendants somehow should have known that sewer service was happening due to its historical pervasiveness in New York City (see Compl. ¶ 59-65; see also Compl. ¶ 26-51). But "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [§ ] 1983." McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977). Moreover, the allegation of a principal's mere "knowledge and acquiescence" in the "misdeeds of [its] agents" is insufficient to survive a motion to dismiss under Rule 12(b)(6). Sanchez v. Abderrahman, No. 10-cv-3641(CBA), 2012 WL 1077842, at *8 (E.D.N.Y. Mar. 30, 2012) (citing Iqbal, 129 S.Ct. at 1949). The Complaint merely mashes together vague allegations, not parsed out as to each defendant, in the hopes that it will give rise to a conspiracy claim; it does not. Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed ...."). Because there are no specific allegations as to each defendant's knowledge of allegedly improper service tactics, Plaintiffs cannot make this showing.

Moreover, Plaintiffs have not pled a constitutional violation. Although service of process fulfills an important due process function, improper service is not a free-standing due process

violation. Sanchez, 2012 WL 1077842, at *8 ("To award damages under 42 U.S.C. § 1983 for an alleged violation of procedural due process, a court must find that, as the result of conduct performed under color of state law, the plaintiff was deprived of life, liberty, or property without due process of law.") (quoting Bedoya v. Coughlin, 91 F.3d 349, 351 (2d Cir. 1996)). At best, Plaintiffs claims that "since the dismissal, when decided, might be without prejudice, Plaintiffs] are at risk of being sued and subjected to improper service for second time." (Compl. ¶ 73). This hypothetical injury does not deprive the Plaintiffs of any constitutional right. Indeed, Plaintiffs do not (and cannot allege a real injury) such as entry of default judgment because they ultimately learned about the pendency of the Underlying State Action. See Sanchez, 2012 WL 1077842, at *8 (collecting cases). Because plaintiffs have established no deprivation of rights, their claim fails.

    E. State Law Claims

Having decided that the federal questions do not state a claim, the court also dismisses Plaintiffs' remaining state-law claims (for alleged violations of New York General Business and Judiciary Laws) in the court's discretion not to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3) ("A court may, in its discretion, decline to exercise jurisdiction over a state law claim if. . . the district court has dismissed all claims over which it has original jurisdiction.").

    IV. Defendants' Motion for Judgment on the Pleadings on their Counterclaims

Defendants also move for judgment on the pleadings on their counterclaims. Defendants may have brought their counterclaims for fear of waiver if the case was not dismissed. Nevertheless, the Court recognizes that at least some of these claims were already litigated in state court, where a judgment against Plaintiffs. To the extent a judgment was not obtained against Plaintiffs (as above, Underlying State Action not brought against Sanchez), the Court

having dismissed all federal claims, declines to exercise supplemental jurisdiction over pure state-law issues. Although courts have ancillary jurisdiction over compulsory counterclaims even where the underlying complaint has been dismissed on non-jurisdictional grounds, the Court can exercise its discretion to dismiss those counterclaims especially where, as here, discovery has not significantly progressed so as to create any unfairness to defendants should they later bring the action in state court. D'Jamoos v. Griffith, 368 F. Supp. 2d 200, 205 n.6 (E.D.N.Y. 2005) (citing Mirkin, Barre, Saltzstein, Gordon, Hermann & Kreisberg v. Noto, 94 F.R.D. 184, 188-90 (E.D.N.Y. 1982)). Here, no discovery has taken place during the pendency of this motion to dismiss so Defendants can bring their claims in state court afresh if they so desire.

V. Defendants' Motion for Sanctions

Finally, Defendants seek sanctions on the ground that the operative allegations of the Complaint are frivolous and "blatant fabrications without a shred of supporting evidence." (Defs. Mem. at 17). A party may be subject to sanctions under Rule 11 for making frivolous claims in a pleading. Fed. R. Civ. P. 11(b)(2) and (c). Rule 11 is violated when it is "clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group. Inc., 186 F.3d 157, 167 (2d Cir. 1999); Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir. 1986) ("Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success.") (internal quotation marks and citation omitted); Fed. R. Civ. P. 11(b)(2).

Prior to filing its motions for sanctions, Defendants served their safe harbor letter by letter dated December 6, 2012. (Elliott Aff. Ex. D); see Fed. R. Civ. P. 11(c)(2) (requiring motion for sanctions to be served under Rule 5, but not be filed or presented to the court if the

challenged paper, is withdrawn within 21 days after service). However, Defendants fail to seek sanctions by separate motion as section (c)(2) also requires: "A motion for sanctions must be made separately from any other motion and describe the specific conduct that allegedly violates Rule 11(b). . ." Instead, it is included with Defendants' motion for dismissal of the complaint and judgment on the pleadings (See Dkt. No. 27, 31). Although arguably only an error of form, rather than function, Defendants' motion for sanctions must be denied because "[a] motion for sanctions *must* be made separately from any other motion." See Fed. R. Civ. P. 11(c)(2).

Finally, although the Court denies this motion for sanctions, the court takes notice that while Plaintiff Sanchez is a pro se litigant, he is no stranger to courts in this district. He has filed similar claims of civil RICO, violations of section 1983 based almost exclusively on allegations of filing false documents with the court, be it fraudulent affidavits of service or false documentary evidence. See, e.g., Sanchez v. Blustein, Shapiro, Rich & Barone LLP, 13-cv-08886-CS (S.D.N.Y.) (42 U.S.C. § 1983, FDCPA, N.Y. Judiciary Law § 487, NY GBL § 349, and intentional infliction of emotional distress claims for alleged improper service); Sanchez v. Contreras, 12-cv-02972-CS (S.D.N.Y.) (civil RICO, 42 U.S.C. § 1983, N.Y. Judiciary Law § 487 and N.Y. GBL § 349 claims for alleged filing of false documents); Sanchez v. Abderrahman, No. 10–cv–3641 (CBA), 2012 WL 1077842 (E.D.N.Y.) (civil RICO, 42 U.S.C. § 1983, FDCPA and NY GBL § 349 claims for alleged improper service). Accordingly, although the Court will not grant monetary sanctions, it dismisses this case with prejudice.

## CONCLUSION

For the reasons stated above, Plaintiffs' cross-motion for disqualification is DENIED. Defendants' motion to dismiss the Complaint is GRANTED, but its motion for sanctions and

judgment on the pleadings on its counterclaim are DENIED. The Court dismisses this action with prejudice. The Clerk is respectfully directed to close the motion (Dkt. No. 27) and the case.

SO ORDERED.

Dated:      March 31, 2014
            New York, New York

_____
ANDREW L. CARTER, JR.
United States District Judge